VAN WYCK *vs.* SEWARD and others.

A judgment in ejectment is of the same binding force and efficacy as any other
  judgment, and is a bar, except in a second action of ejectment.
Therefore, when an action of ejectment was brought in the Supreme court to
  try the validity of a deed, and the question of fraud was ultimately passed
  upon by the Court of Errors, who rendered a judgment against the plain-
  tiff, Chancery will not sustain a bill for the same plaintiff to impeach the
  deed as fraudulent upon the grounds involved in the former suit.

THE opinion of the court in this case turned upon the ques- *May 2, 3, 4,*
tion, whether a judgment of the court of errors, in the subject *1832.*
matter now before the court, was a good defence to the present *Effect of*
bill?                                                             *judgment in*
  Considerable litigation had been had between the parties at *error, in sub-*
law. All this, as well as the facts, will be found sufficiently *sequent suit*
                                                                *on same mat-*
referred to in the opinion of the Vice-Chancellor.              *ter.*
                                                                *Ejectment.*

Mr. *D. B. Tallmadge* and Mr. *S. Sherwood,* appeared for the
complainant; and

Mr. *James Tallmadge,* for the defendants.

THE VICE-CHANCELLOR. The main object of the bill in *September 3.*
this cause is, to set aside a deed of a farm in Duchess County,
executed by William Seward to his son Philander, one of the
defendants: on the ground of its being a voluntary conveyance,
without consideration, and fraudulent as respects the complai-
nant, a creditor of the grantor.
  This deed formed the subject of controversy in the case of
*Jackson* v. *Seward,* 5 *Cowen R.* 67, where, in an action of
ejectment brought by the present complainant, to try its validity,
the supreme court rendered a judgment in his favor; declaring
the deed to be fraudulent in law.
  Upon a writ of error, the judgment, by an almost unanimous

vote of the court of errors, was reversed. The case, with the opinions then delivered, will be found in 8 *Cowen R.* 406.

The plaintiff, having thus failed in his suit at law, files his bill in this court for relief against the deed. And the defendant, amongst other things, sets up the judgment of the court of errors as a bar. Whether the plaintiff is precluded by that judgment from controverting any further the validity of the conveyance, is the first question to be considered.

The action of ejectment was brought avowedly for the purpose of putting in issue the validity of the deed : the plaintiff claiming adversely to it, under a title acquired by him at a sheriff's sale, upon an execution against the grantor subsequent to the deed, and the defendant, Philander Seward, being in possession under it. Upon the trial of the cause, the parties went into the same evidence as now ; on the one hand, to impeach, and, on the other, to support the conveyance. After the testimony was closed, the plaintiff, by his counsel, conceded, that actual fraud had not been shown, and that the defendant was entitled, on this point, and from the facts before the jury, to a verdict : reserving the question, whether, as against a creditor, the conveyance was not fraudulent in law and void? A verdict was accordingly taken for the defendant upon the question of actual fraud ; with a reservation of the other point.

The supreme court was then called upon to determine, from the evidence, whether the deed was to be considered a voluntary one and fraudulent in law, as a matter entirely apart from actual or intentional fraud, which, it was admitted, did not exist. The court, acting upon such a distinction, considered it fraudulent in law.

When this decision came under review in the court of errors, the distinction thus taken was controverted, as being entirely groundless ; and, as far as can be judged from the opinions delivered, the case underwent an elaborate discussion upon all the points of law and fact which could possibly arise. Chancellor *Jones* discussed the question of form in the special verdict and refrained from an examination of the merits. He confined his views almost exclusively to the defect of the special verdict (which set forth at large the evidence instead of barely pre-

senting the facts) and declared he could not decide the questions of law raised for the consideration of the court: because, he could not, in that court of appellate jurisdiction, form his judgment upon the testimony of witnesses, although he acknowledged it to be the business and duty of the judges and Chancellor, in their respective courts of original jurisdiction, to collect the facts from the testimony laid before them, and apply the law to the facts when thus ascertained; and hence, by reason of the informality in turning the case, as presented to the supreme court, into a special verdict (by which he felt himself constrained to say he could not look into the merits) he concluded, that the only course was to reverse the judgment. How this followed from the premises, I am at a loss to perceive: for it was not ascertained that there was error in the judgment, and the informality alluded to did not occur until after the rendition of the judgment, when the case was put into form, in order to be incorporated in the record preparatory to bringing the writ of error, and by the party who sued it out.

Perhaps I am bound to presume, the learned Chancellor did not intend to lay it down as a rule, that a party bringing a writ of error was entitled to a reversal of the judgment, provided he could introduce such an informality into the record as would preclude the court from looking into the merits; and yet this would seem to be the consequence, if his conclusion be correct.

It is somewhat important to ascertain the grounds upon which the judgment was reversed; and I have thus far noticed the opinion delivered by the then Chancellor, for the purpose of showing it hardly possible to suppose, that a majority of the members of the court of errors could have concurred in the reversal upon the ground of the informality of the special verdict. It appears to me it would have been much more rational, upon this view alone, to have left the judgment undisturbed.

That such was not the ground, I think is manifest from other considerations. Senators, *Spencer, Stebbins,* and *E. B. Allen,* delivered opinions (as appears from the report of the case) upon the different points involving the whole merits; and the

42

court, with the exception of one senator, concurred in the result of the opinions delivered, and reversed the judgment. The fair inference, therefore, is, that it was reversed, not upon mere formal or technical grounds alone, but after a full consideration of all the questions then raised in relation to the validity of the deed. Senator *Spencer,* adverted to the difficulty in the form of the special verdict, as well as to the judgment's being erroneous in relation to a certain two acres of land, (and therefore reversable :) but, still, he proceeded to consider the remaining questions in the cause. He held, in the first place, as the supreme court had done, that Van Wyck, the plaintiff, was the creditor of William Seward at the time of the conveyance to his son; and, in the next place, that the conveyance was not voluntary, but made for a valuable consideration, upon a purchase by the son; therefore, not constructively or in law fraudulent; and that, strictly speaking, there was no such thing as fraud in law : for " fraud or no fraud ?" was always, he considered, a question of fact to be submitted to a jury, and as this question had, by the consent of the plaintiff, been determined by the jury in favor of the defendant, the verdict on this point was conclusive and judgment should have been rendered pursuant to it.

*Stebbins,* senator, differed from the supreme court in this: that Van Wyck was not a creditor at the time of the conveyance, and, therefore, the legal presumption of fraud did not arise even if the deed was to be considered a voluntary one ; and, to render it void against him as a subsequent creditor, he was bound to show actual or intentional fraud, and, as this was not shown, but the contrary admitted and found by the jury, the judgment was erroneous.

Senator *Allen* went more largely into the doctrine of legal or constructive fraud, as applicable to voluntary conveyances ; and held such a conveyance, by one indebted at the time *prima facia,* but not conclusively, fraudulent, and that the judgment of the supreme court was incorrect : being founded upon the notion of a legal fraud and in entire disregard of the intent and purpose of the conveyance. He also considered the deed not

purely voluntary, but founded, in part, upon a meritorious and, in part, upon a valuable consideration.

Although there are shades of difference in these several opinions, yet, taking them collectively, it appears, that every question which I have been called upon to consider for the purpose of overthrowing the deed, has been examined and passed upon by the highest tribunal of the State, with the exception, however, of the question of actual fraud in the transaction, which, neither the court of errors nor the court below was called upon to decide, it being properly a question for the jury, and which, by their verdict and the concession of the plaintiff, was, for all the purposes of the suit, set at rest.

Under these circumstances, I do not feel myself at liberty to treat the case as one open to examination in this court. A reference to the record only, shows, that the whole matter of the deed now sought to be investigated, is *res adjudicata;* and so far as that was concerned, it was between the same parties and is conclusive.

But it is said in argument, the case is now different from what it was; and, the question of actual or intentional fraud is now for the first time presented. The recent decision of the court of exchequer in England, in *Jones* v. *Nixon,* 1 *Younge's R.* 359, is an authority to show, that, even on this ground, the enquiry cannot be gone into.

Besides, I think the complainant has precluded himself from raising the question: by consenting to a verdict against him on the point. He has thereby virtually admitted, by matter of record, the non-existence of such fraud.

Again: it is said, it was a verdict and judgment in an action of ejectment, which is never conclusive, either by way of evidence or as a plea in bar. One trial and judgment in ejectment, it is true, is no bar to another action of ejectment. The reason is this: that, as the action is brought to recover possession of lands founded upon a right of entry, the party claiming is supposed to have entered and sealed a lease, and the lessee brings the action upon this demise; and every such entry and demise, although a fiction in law, is supposed to give a new right of action. The rule, I apprehend, applies only when a

new action of ejectment is brought, for, in any collateral proceeding between the same parties, as, for instance, in an action for mesne profits, the recovery in ejectment is conclusive. So, if instead of bringing a new action of ejectment, founded upon a real or fictitious new entry and demise, the party resorts to another mode of proceeding or goes before a different tribunal, setting up no new claim of right, but proceeding to enforce the same claim or right as it existed at the time of the former trial and which was then determined against him, I know of no rule or principle by which he can be permitted to litigate the matter over again, with the former judgment standing against him in full force: even though it should be a judgment rendered in an action of ejectment. Upon the claim being thus circumstanced, such a judgment is as binding and conclusive as any other.

The case of the *Earl of Bath* v. *Sherwin,* to be found in 10 *Mod. R.* 1, *Gilb. Eq. Ca.* 2, and in *Prec. in Ch.* 261, and, on appeal, in 4 *Br. P. C.* (Tom. ed.) 373, contains nothing inconsistent with this view of the law. There, a bill was filed for a perpetual injunction to restrain a party from bringing any more ejectments at law, after five verdicts in succession had been rendered against him. Lord Chancellor *Cowper* refused the injunction and dismissed the bill: upon the ground, that the party had a right at law to repeat the action as often as he pleased, and equity had no jurisdiction by which it could interfere. But, upon an appeal to the house of lords, his lordship's decree was reversed and the injunction was directed to issue: not because one verdict was a bar to another action of ejectment, but for the reason that, after several trials, and all attended by the same result, the court of chancery ought to interfere, for the purpose of preventing vexatious litigation and in order to quiet possession. This case, consequently, only shows how, upon this principle, courts of equity may, generally, interfere in order to check the bringing of repeated actions; although this power no longer remains to be exercised by the court of chancery of this State: since, by the improvement effected in the action of ejectment under the Revised Statutes, courts of

law may declare the action final, after there have been two
successive verdicts.

I perceive nothing in the case of the *Earl of Bath* v.
*Sherwin,* or in the spirit of the statute now in force, which
militates against the conclusion, that a judgment in an action
of ejectment is of the same binding force and efficacy as
any other judgment, except in a second action of ejectment,
where, by reason of the fictitious nature of the proceeding, it
is not a bar.

Upon this ground alone, I am of opinion the deed in question
is not now liable to be impeached in this court for fraud. The
judgment of the court of errors is a good defence to the present
bill, so far, at least, as the title in Philander Seward is con-
cerned.

It is, therefore, unnecessary for me to express any opinion
upon the questions so elaborately discussed by the respective
counsel, as to whether this deed was a voluntary conveyance
and to be deemed constructively fraudulent, and whether the
evidence in the cause makes out a case of actual and intentional
fraud. Nevertheless, if I felt myself at liberty to consider
these as open questions, I think I should have great difficulty
in answering them affirmatively: especially, after what has
transpired in regard to the law and the facts of the case in the
court of errors, connected with the subsequent decisions of
the supreme court in the cases of *Jackson* v. *Peck,* 4 *Wend.*
*R.* 301, and *Jackson* v. *Timmerman,* 7 *Wend.* 436.

There is, however, another branch of the case which it is
necessary to consider. Admitting the title to be a valid one
in Philander Seward, as a purchaser from his father, the com-
plainant claims, by way of alternative, to be paid his debt out
of the moneys made payable by the bonds of Philander Seward
to his sisters, as voluntary gifts by their father to them, and out
of the residue in value of the property which remained in
Philander as a voluntary gift to him, over and above the
amount of the bonds to his sisters. On this account, the two
sisters and their husbands have been made parties to the suit.
It appears to me, that the question, whether these donations
are to remain valid or be disturbed, depends upon the same

point of " fraud or no fraud" which has been agitated in relation to the conveyance of the farm. The giving of the deed and the execution of the bonds by Philander, to secure his father an annuity and his sisters certain shares of the property which the father had intended to give them, were all parts of the same transaction, growing out of an arrangement previously contemplated, and whereby the father, then advanced in years, agreed to settle his property amongst those of his children who had not before received his bounty ; so that, if there was no fraud intended as respects the conveyance of the property, (and, on this point, I think the complainant is concluded,) I do not see how any actual or intentional fraud could exist in relation to the other parts of the same transaction. Gifts *inter vivos* are consummated by delivery; and such consummation confers upon the donee a right which cannot be affected where such gifts are made in good faith. If the donor is indebted at the time, such a thing may be, *prima facia*, evidence of fraud against a creditor, but this presumption may be repelled by proof or circumstances. Although the delivery of the bonds to the daughters was, as between them and their father, a voluntary settlement or gift, yet the question in these and similar cases is not any more, whether it is fraudulent at law, but whether actual fraud was intended: *Jackson* v. *Peck* and *Jackson* v. *Timmerman*, before cited.

On this subject, I fully concur with Mr. senator *Allen;* especially, in the sentiments expressed by him at the close of his opinion, namely, that the transaction was fair and honest in itself and the children, thereby, acquired rights which are not to be disregarded. It has been well remarked in argument, that if the defendants now before the court are bound to contribute to the payment of the complainant's debt, then, the other children of William Seward, to whom he made advances long previously, are, upon the same principle, equally liable, and ought to be made parties to the suit. I must, however, say, that in the absence of actual fraud, none of them are liable.

But, supposing it to be otherwise, and that the complainant has a right to the decree of this court calling them to an account for the property received by way of gift from their father, then,

another ground of defence has been assumed by way of countervailing that right, namely, that the complainant is bound, before he can ask for the aid of this court for such a purpose, to do equity and account for the fair value of the lands of William Seward, junior, which he put up to sale and bought in under the executions. This point has been urged with great force; and, following the example of Judge Story in *Beam* v. *Smith*, 2 *Mason*, 299, I am by no means prepared to say the defendants are not entitled to the benefit of it. I forbear to examine the point narrowly. From the views I have taken of the case, there is no necessity I should do so.

According to those views and for the reasons already given, I am of opinion the complainant's bill should be dismissed, with costs.

In considering this case, I have felt that, as between the parties, it was a matter of indifference which way the cause was here decided; convinced, as I am, that the course which has once been taken will be pursued again: that the spirit of controversy, awakened between them, will not be allowed to slumber, until the judgment of the highest tribunal of the State shall have put it at rest. I have, nevertheless, considered the case attentively and with a sole view to a correct decision. If it appear that I have erred, I shall have no cause for self-reproach.